MARY A. ZIMMERMAN v. ROBINSON & COMPANY, Appellants.

| 118 | 117 |
| 128 | 73 |
| 118 | 117 |
| f133 | 661 |

| 118 | 117 |
| j143 | 741 |

Sale of Threshing Machine: CONTRACT: PERFORMANCE: JURY QUESTION. Whether the purchaser of a threshing machine performed his part of the contract of sale which required him to "furnish friendly assistance to remedy defects" is a question for the jury.

Same: QUALITY OF WORK: TEST: DISPUTE. Where the contract of sale provides that in case of a disagreement as to the working of the thresher, the purchaser is to test the machine by the trial of another, such trial is not required in the absence of a showing of disagreement.

Same: RETURN OF MACHINE: WAIVER OF: Where a contract of sale provides for a return of the machine, an agent without authority cannot waive such provision, neither will failure of defendant to answer a letter from plaintiff notifying defendant that he would not keep the machine, nor a sale of notes given for the machine constitute such a waiver.

*Appeal from Franklin District Court*—Hon. J. R. WHIT
AKER, Judge.

MONDAY, OCTOBER 20, 1902.

ACTION to recover for breach of warranty. Trial, and
a verdict and judgment for the plaintiff. The defendants
appeal.—*Reversed.*

*E. P. Andrews* for appellants.

*Jno. Hemingway* for appellee.

SHERWIN, J.—The defendants sold the plaintiff's as-
signor a "Bonanza Thresher" under a warranty, the ma-
terial part of which is as follows: "If purchasers shall
fail to operate the machine satisfactorily to
themselves, they are to give written notice to
the agent from whom purchased, and also to
Robinson & Co., at Richmond, Indiana, and allow suffi-
cient time for them to get to the machine and remedy de-
fects, if any. If the fault is with the purchasers in
operating, they are to pay all expenses, including wages
of the men sent to see the machine. If the purchasers
remain unsatisfied, after giving friendly assistance to
remedy defects, if any, and operate the machine, and wish
more evidence, they are to procure and bring to same job
or stackyard another machine of similar size, and do as
much work with less waste, in less time, and with same
power; then the machine may be returned, and another
one substituted, or the purchase money returned, as the
purchaser may choose." The machine did not work satis-
factorily to the purchaser, and upon notice thereof the
defendants sent an expert to the field to remedy the de-
fects complained of. He spent a part of one day trying to
make it work, but failed to do so. He thereupon left it,
for the reason that he was not an expert in handling a

*(margin note: 1. SALE of thresh-ing machine: contract: performance: jury question.)*

machine in flax, and stated to the purchaser that he would procure a man who was such an expert, and give the machine another trial. A few days thereafter he did take a man to the machine, but the purchaser then refused to assist in any way in running it except to operate the engine which furnished the power therefor. We think it was a question for the jury whether the purchaser had reasonably performed the requirement of the contract to furnish "friendly assistance to remedy the defects." It certainly cannot be said, as a matter of law, that the vendor had the right to continue an indefinite series of experiments to make the machine work.

The clause of the contract relating to a test with another machine is somewhat obscure, but we think the only reasonable and logical construction which can be given it is that, if there was a dispute between the parties as to the quality of work done by the machine, then it was the duty of the purchaser to make a test with another machine under the same conditions. This test was not made by him, and the court instructed that the contract did not call for it under any conditions. The instruction placed a wrong construction on the contract, but as there was no evidence of a disagreement as to the work done at the trial there was no reversible error in the instruction.

2. SAME: quality of work: test: dispute.

The machine was not returned as provided in the contract, and the plaintiff relies upon a waiver of such return. The defendants had no agency at Hampton, where the machine was delivered to the plaintiff's assignor, and the sale seems to have been made by the defendants upon a written order addressed to them at Richmond, Ind. Upon the failure of the expert to make the machine work, he was told that it would be returned, and asked whether it should be returned to Hampton, the place at which it was received, or at Chapin, the home of the purchaser. He answered

3. SAME: return of machine: waiver of.

that l.e had nothing to do with that matter, and could not say without instructions from the defendants. There was clearly no waiver at this time, for he was in no way connected with the sale of the machine, as was the fact in each of the cases cited by the appellee, and no authority was shown to make such waiver. Indeed, he was used as a witness by the plaintiff, and testified that he had no such authority. By this the plaintiff is bound. *Bomberger et al, v. Griener*, 18 Iowa, 477; *Faville v. Lundvall et al*, 106 Iowa, 135.

On the 16th of August, 1890, Zimmerman, the purchaser, notified the defendants by letter that he would not keep the machine, but asked no directions as to where delivery of same should be made; in fact, he did not mention returning it, but made a demand for his notes and mortgage and for damages. The failure to answer this letter did not constitute a waiver of the return of the machine. Under his contract he was to return it to the defendants, presumptively, at the place where received, and the defendants were under no obligations to remind him of his contract, and to direct, unasked, his action thereunder.

The sale of some of the notes given for the machine did not operate as a waiver of its return. They were sold to a bank in the usual course of business, and, while they carried with them the mortgage security on the machine in question, there is nothing to indicate that they could not be secured for the purchaser if necessary. And the fact that the machine was mortgaged for a part of the purchase price would not stand in the way of its return under the contract, no matter where the mortgage might be held; for, if any loss was to be suffered on account of the mortgage, it would fall upon the defendants, who then held the property. Furthermore, the contract does not provide in terms for the return of the notes. It stipulates for a return of the purchase money, and, in any event, the

plaintiff would be fully protected; for if the notes were to be returned, and the defendants had put it out of their power to do so, they would have to return the purchase price in money, as a general rule.

Instruction 11 given by the court placed a wrong construction on the contract. The purchaser was bound thereunder to give the machine a fair trial, and to furnish the necessary labor and material to so do, and if necessary this trial was to be when the defendant's experts were present. This is the clear meaning of the contract, taken as a whole, and any other construction thereof would do violence to its language and intent and put it in the power of any dissatisfied purchaser to prevent entirely the test provided for in the contract.

What has been said disposes of the controlling questions in the case, and the judgment must be REVERSED.